**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,                    No. CR 06-00710 WHA

        Plaintiff,

    v.                                      **ORDER DENYING MOTIONS
                                               FOR SEVERANCE**

KATHERINE ELIZABETH PAIZ; LUIS
ALBERTO GONZALEZ,

        Defendants.
_____/

## INTRODUCTION

In this criminal prosecution, both co-defendants have filed motions to sever their trials from each other.  Defendant Luis Alberto Gonzalez moves for a severance based on a *Bruton* issue.  Defendant Katherine Elizabeth Paiz, joined by Gonzalez, moves for severance based on an allegation that defendant Gonzalez's exculpatory testimony would be available at a separate trial, but not at a joint trial.  For the below-stated reasons, the motions for severance are **DENIED**.

## STATEMENT

Defendants are charged with conspiracy, wire fraud, use of fire to commit a federal felony, and aiding and abetting.  The indictment alleges that defendants conspired to falsely report the theft and destruction of a vehicle to Progressive Insurance Company.  At the time of the conduct in question, defendants were not married.  They are now husband and wife.

According to the indictment, a 2006 Honda Accord EX sedan was reported stolen to police by defendant Paiz on June 22, 2006.  The same evening, the California Highway Patrol found the vehicle burned in a field.  On June 23, 2006, defendant Paiz telephoned Progressive and reported the vehicle as stolen and burned.  On July 13, 2006, Paiz again discussed the alleged theft of the car with a Progressive representative and stated that she believed the car had been stolen.

Defendants move for severance pursuant to Federal Rule of Civil Procedure 14.

**1.     PAIZ'S SEVERANCE MOTION.**

Defendant Paiz moves for severance based on the right of an accused "to present witnesses in his own defense." *Taylor v. Illinois*, 484 U.S. 400, 408 (1988).  Specifically, defendant Paiz contends that defendant Gonzalez would offer evidence exculpatory to her if their trials were severed.

When a defendant moves for severance based on the possibility that a co-defendant would provide exculpatory evidence if the trials were severed, the defendant must show: (1) that he or she would call the defendant at a severed trial; (2) that the co-defendant would in fact testify, and (3) that the testimony would be favorable to the moving party.  *United States v. Reese*, 2 F.3d 870, 892 (9th Cir. 1993).

Defendant Paiz has satisfied the first two requirements for severance.  Defendant Gonzalez here submitted an *ex parte* under-seal declaration in support of the instant motions. The declaration explains that he would assert his Fifth Amendment right not testify if the trial was not severed.  He would, however, testify in a separate trial of defendant Paiz.[1]

The declaration goes on to state that if he testified, Gonzalez would offer evidence suggesting that Paiz knew nothing of the fire before its occurrence.  According to the declaration, Gonzalez would testify to certain statements that Paiz made to him after learning from the California Highway Patrol that her car had been found burned.  He would also describe

---

[1]  The declaration remains under seal and this order only addresses its contents to the extent that defendants' counsel revealed them in the pleadings and at oral argument.

2

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

her demeanor as surprised, shocked, and distressed.  Whether this testimony would be favorable

to defendant Paiz requires resolution of an important legal question — whether the statute under

which she is charged requires that the government prove that she knew of the intended use of

fire before the car was burned.  This order turns to that legal issue first.

### A.      Liability Under 18 U.S.C. 844(h)(1).

Count Four of the indictment alleges:

> On or about June 22, 2006, in the Northern District of California,
> the defendants, Katherine Elizabeth Paiz and Luis Alberto
> Gonzalez, did knowingly use fire to commit a felony which may
> be prosecuted in a court of the United States, specifically wire
> fraud as alleged in Counts Two and Three, in violation of Title
> 18, United States Code, Sections 844(h)(1) and 2.

In turn, Section 844(h)(1) states, in relevant part:  "Whoever . . . uses fire or an explosive to

commit any felony which may be prosecuted in a court of the United States . . . shall, in

addition to the punishment provided for such felony, be sentenced to imprisonment for 10

years."

The key issue here is the extent to which the government must prove that defendant Paiz

knowingly "used fire" and whether she knew of the planned use *before* the fire took place.  *See*,

*e.g.*, *United States v. Beardslee*, 197 F.3d 378, 384–85 (9th Cir. 1999).[2]  Among other things,

the government contends that regardless of whether Paiz knew of the plan to use fire before the

fire actually occurred, she later used the fact that the car had been burned, and therefore "used

fire" while attempting to defraud the insurance company.

The parties agree that there are three possible bases for which the government could

establish Paiz's Section 844 liability  *First*, it could prove that she actually used fire.  *Second*, it

could prove that she aided and abetted the use of fire to commit wire fraud.  *Third*, it could

prove that pursuant to *Pinkerton v. United States*, 328 U.S. 640 (1946), she could reasonably

---

[2] Although not explicitly called out by the statute, all parties agree that the use of fire must have been "knowing" (Gov't Supp. Br. 3; Paiz Supp. Br. 3).

3

1   foresee the use of fire as a necessary and natural consequence of a conspiratorial agreement.

2   The government contends that it could satisfy any of these three grounds.

3                    **(i)      *Principal Liability.***

4           The government first contends that Paiz could be liable directly under Section 844

5   because by "availing herself" of the car fire, she "used fire" within the meaning of the statute.

6   According to this theory, it is irrelevant whether she knew in advance that her associates

7   intended to burn the car prior to the fire on June 22, 2006.  The government maintains that the

8   *only* relevant fact is that when she called Progressive on June 23, she knew that the car had

9   burned (even if she had not known or expected in advance that arson would be employed).

10  Under the government's theory, because she knew that the car had been burned when she made

11  the phone call, she "used" fire during the commission of the fraud.  In the government's view,

12  this would be enough for liability to attach under Section 844(h).

13          This argument lacks merit because the government's suggested theory would

14  overexpand the definition of "use."  The employment of the word "use" in Section 844 is

15  similar to its utilization in 18 U.S.C. 924(c), which provides certain penalties for whoever "uses

16  or carries a firearm" during a crime of violence or drug trafficking crime.  In *Bailey v. United

17  States*, 516 U.S. 137, 143 (1995), the Supreme Court held that for 924(c) purposes, the term

18  "use" means "active employment."  In so holding, the opinion stated that the word "use" should

19  be given its "'ordinary or natural' meaning, a meaning variously defined as '[t]o convert to

20  one's service,' 'to employ,' 'to avail oneself of,' and 'to carry out a purpose or action by means

21  of.'"  *Id.* at 145.

22          Courts interpreting the definition of "use" in Section 844(h) have relied on the Supreme

23  Court's definition of "use" in the Section 924(c) context.  *See United States v. Ihmoud*, 454 F.3d

24  887, 890–91 (8th Cir. 2006); *United States v. Ruiz*, 105 F.3d 1492, 1503–04 (1st Cir. 1997); *see

25  also United States v. Zendeli*, 180 F.3d 879, 885 (7th Cir. 1999) (relying on *Ruiz*).  In *Ruiz*, the

26  First Circuit relied on *Bailey* and held that because the defendants had set fire to the building in

27  question "'to carry out' their scheme to deceive the insurance company into making payment

28                                                  4

1   for claimed losses," they could be held liable under Section 844(h). "Specifically, the fire

2   constituted 'the means' by which the defendants attempted to create the appearance of a

3   legitimate loss of insured items." *Ruiz*, 105 F.3d at 1504. Similarly, in *Zendeli*, the Seventh

4   Circuit held that a defendant is liable for "mail fraud under § 844(h) when he *initiates* a fire as

5   part of a scheme to deceive an insurance company into making payments for claimed losses."

6   *Zendeli*, 180 F.3d at 885 (emphasis added). Finally, in *Ihmoud*, the Eighth Circuit held that

7   there was sufficient proof to support a conviction under Section 844(h) where, *prior to the fire*,

8   the defendant "knew that the purpose of the arson was to defraud the insurance company."

9   *Ihmoud*, 454 F.3d at 890–91. This order relies on these decisions as highly persuasive

10  authority.

11        The government's proposed definition of "use" would expand that word beyond what

12  the above-cited case law allows. The mere fact that, during an alleged phone call to

13  Progressive, defendant referred to the fact that a fire had occurred does not mean that she *used*

14  fire. In the decisions cited above, each of the defendants knew *before* the fires were started that

15  fire would be used as the method of destruction and that such use would be the means to

16  perpetrate the fraud. In each of those holdings, the government proved "active employment" of

17  fire with the concurrent intent to commit a felony. Here, to establish *principal* liability, the

18  government must prove defendant Paiz's own "active employment" of the fire before or during

19  the actual burning of the car. It will not be enough for the government to prove that after

20  learning of the fire, she used the fact of the burned car to attempt to defraud the insurance

21  company.

22                        **(ii)    *Aider and Abettor Liability.***

23        To aid and abet another to commit a crime, it is necessary that a defendant "associate

24  himself with the venture, that he participate in it as in something that he wishes to bring about,

25  that he seek by his action to make it succeed." *United States v. Hungerford*, 465 F.3d 1113,

26  1117 (9th Cir. 2006). In the Section 924(c) context, the Ninth Circuit has held that a person is

27  guilty of aiding and abetting the use of a firearm in violation of Section 924(c) if he or she

28                                                          5

"directly facilitated or encouraged the use or carrying of a firearm." *United States v. Bancalari*, 110 F.3d 1425, 1429–30 (9th Cir. 1997).

The government again contends that even if Paiz never personally set the fire or had prior knowledge of the fire, she aided and abetted the use of fire when she knowingly reported the fire as part of a scheme to defraud Progressive. This theory is untenable. The Ninth Circuit has explained that "the federal statute governing aiders and abettors contains no knowledge requirement on the part of aiders and abettors independent of or in addition to that required in the underlying statute for the principal." *United States v. Graves*, 143 F.3d 1185, 1189 (9th Cir. 1998). Accordingly, the analysis of defendant Paiz's potential guilt under aider and abettor liability is similar to that under the principal liability theory discussed above. Defendant Paiz can only be held to have "directly facilitated or encouraged the use" of fire if she knew or expected in advance that the fire was going to occur. If, before the fire, she only knew that the car was going to be destroyed, but had no suspicion of the manner in which her associates would destroy it, she cannot be said to have aided and abetted the use of fire to commit wire fraud.[3]

### (iii)     Pinkerton *Co-conspirator Liability.*

The government's third possible basis for liability is grounded in *Pinkerton*. Under *Pinkerton*, a co-conspirator is vicariously liable for "reasonably foreseeable substantive crimes committed by a co-conspirator in furtherance of the conspiracy." *United States v. Chong*, 419 F.3d 1076, 1081 (9th Cir. 2005). The Ninth Circuit has explained that to "establish *Pinkerton* liability, the prosecution must demonstrate that:  (1) the substantive offense was committed in furtherance of the conspiracy; (2) the offense fell within the scope of the unlawful project; and (3) the offense could reasonably have been foreseen as a necessary or natural consequence of

---

[3]  The only evidence in the record regarding what defendant Paiz knew is contained in a summary of an interview she had with FBI agents.  According to that summary, defendant Paiz admitted to FBI agents that she participated in the staged theft of her vehicle, knowing that her associates would be "getting rid of the car" and that they "planned to dispose of the vehicle" (Blank Decl. Exh. A at 2–3).  The summary does not, however, specifically state that she knew that fire would be the method used to destroy the car.

*United States District Court*

For the Northern District of California

the unlawful agreement." *Ibid.* (quotations omitted). Importantly, *Pinkerton* indicated that the substantive offense of a co-conspirator could not be attributable to other members of the conspiracy if the offense "was merely a part of the ramifications of the plan which could not be reasonably foreseen as a necessary or natural consequence of the unlawful agreement." *United States v. Monroe*, 552 F.2d 860, 864–65 (9th Cir. 1977). Foreseeability is determined "when the agreement is made and not at or immediately before the time the substantive offense is actually committed." *Id.* at 866.

Paiz is charged with entering into a conspiracy to destroy her car to fraudulently profit from the insurance payment. The government requests a finding as a matter of law that it would have been reasonably foreseeable to a party involved in any such agreement that fire would be used to destroy the insured property. The Court declines to so find. Whether the use of fire was reasonably foreseeable to Paiz at the time the agreement was made will depend on the facts and circumstances in the context of the agreement. This order holds that as to the *Pinkerton* theory, the government must prove that defendant Paiz actually expected at the time the agreement was made that fire would be used to destroy the car *or* that under the circumstances she should have expected that fire was one of the ways the car would be destroyed. Whether the use of fire was reasonably expected will be a question of fact for the jury to decide.

**B.     Whether the Proposed Testimony Is "Substantially Exculpatory."**

This order now considers whether, consistent with the above holdings, defendant Gonzalez's testimony would be favorable to defendant Paiz. To satisfy the "favorable testimony" requirement, a defendant must show that the co-defendant's testimony is "substantially exculpatory." *United States v. Mariscal*, 939 F.2d 884, 886 (9th Cir. 1991). Testimony is not "substantially exculpatory" if it would "merely contradict portions of the government's proof . . . leaving other inculpatory evidence that in and of itself would be sufficient to support a conviction." *Reese*, 2 F.3d at 892. Moreover, the Court must consider the "possible weight and credibility of the predicted testimony, the probability that such

**United States District Court**
For the Northern District of California

1   testimony will materialize, [and] the economy of a joint trial." *United States v. Pitner*, 307 F.3d

2   1178, 1181–82 (9th Cir. 2002).

3          Some aspects of the proposed testimony would be admissible under the Federal Rules of

4   Evidence.  Gonzalez's observations of Paiz's behavior and affect are not hearsay, but direct

5   observations of the appearance and actions of another person.  This testimony would be

6   admissible.  Other more important aspects of the declaration are far more problematic.  Most of

7   the proposed testimony would describe statements by Paiz to Gonzalez.  Those statements are

8   hearsay statements and would be excluded unless admissible under an exception to the hearsay

9   rule.

10          Defendants offer two plausible exceptions that would render the proposed testimony

11   admissible — Rule 803(2), governing excited utterances, and Rule 803(3), governing

12   statements of a declarant's existing mental, emotional, and physical condition.

13                        **(i)      *Rule 803(2).***

14          Turning first to the excited-utterance exception, Rule 803(2) excludes from the hearsay

15   rule:  "A statement relating to a startling event or condition made while the declarant was under

16   the stress of excitement caused by the event or condition."  In the Ninth Circuit, there are two

17   requirements for admission of a hearsay statement under the excited-utterance exception:

18   "First, there must be some occurrence or event sufficiently startling to render normal reflective

19   thought processes inoperative.  Second, the statement of the declarant must have been a

20   spontaneous reaction to the occurrence or event and not the result of reflective thought."  *United*

21   *States v. McLennan*, 563 F.2d 943, 948 (9th Cir. 1977).  Accordingly, "when a hearsay

22   statement is offered under this exception, the trial court must make a preliminary factual

23   determination that the declarant was so excited or distraught at the moment of utterance that he

24   did not reflect (or have an opportunity to reflect) on what he was saying."  *Ibid.*

25          The declaration here provides an inadequate basis on which to make such a finding.

26   While learning that her car was burned may have given rise to some level of excitement, that

27   fact alone is not enough for the Court to declare that Paiz was "so excited or distraught at the

28

United States District Court

For the Northern District of California

moment of utterance that [s]he did not reflect . . . on what [s]he was saying." *Ibid.*  Indeed, here she did not even find the burned car herself, nor did she personally observe the car.  She was told about the car by the highway patrol.  In such circumstances, the Ninth Circuit has aptly recognized that "[m]ost courts . . . would probably be extremely skeptical regarding whether one merely informed of an event could become so excited upon hearing of it as to lose the power of reflective thought." *Ibid.*  This order holds that the excited-utterance foundation has not been met.

### (ii)   *Rule 803(3).*

Defendants also rely on the present-state-of-mind exception.  Rule 803(3) excepts from the hearsay rule:  "A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will."  The Ninth Circuit has identified three factors bearing on the "'foundational inquiry on admissibility' under Rule 803(3):  contemporaneousness, chance for reflection, and relevance." *United States v. Miller*, 874 F.2d 1255, 1264 (9th Cir. 1989).  The Ninth Circuit has further explained:

> The state of mind declaration has probative value, because the declarant presumably knows what his thoughts and emotions are at the time of his declarations.  The more time that elapses between the declaration and the period about which the declarant is commenting, the less reliable is his statement, because the greater chance there is that his memory is erroneous.  The state of mind declaration also has probative value, because the declarant presumably has no chance for reflection and therefore for misrepresentation.  The greater the circumstances for misrepresentation, the less reliable is the declaration.  Finally, the state of mind declaration must be relevant to some issue in the case.  Where state of mind itself is in issue, the court must determine if the declarant's state of mind at the time of the declaration is relevant to the declarant's state of mind at the time at issue.

*United States v. Ponticelli*, 622 F.2d 985, 991 (9th Cir. 1980) (citations omitted), *overruled on other grounds by United States v. De Bright*, 730 F.2d 1255, 1259 (9th Cir. 1984).

9

United States District Court

For the Northern District of California

1    According to declaration, Paiz made two sets of statements to Gonzalez.  According to

2  the declaration, the first statements were made "immediately" after she found out that her car

3  had been burned.  The problem with the proffer is that Gonzalez had no way of knowing

4  whether the statements were truly made "immediately" after she learned what had happened to

5  the car.  The time lapse between her conversation with law enforcement and her conversation

6  with Gonzalez is certainly not established in Gonzalez's declaration.  The only person who

7  could testify regarding the timing would be defendant Paiz.  Anything she said to Gonzalez on

8  that point would be inadmissible hearsay.  Such a fact would not be provable through defendant

9  Gonzalez.  The first set of statements is inadmissible under Rule 803(3) because their timing

10  cannot be established.  Thus, the contemporaneousness and chance-for-reflection requirements

11  have not been satisfied.

12    In a similar way, the second set of statements is even more problematic.  The proffer

13  provides *no* context for when the second statements were made, and only suggests that they

14  were made some unspecified amount of time after the first statements.  Neither the

15  contemporaneousness nor chance-for-reflection requirements have been met for the second

16  statements.  The statements were likely made a significant amount of time after Paiz supposedly

17  learned about the burned car.  In the time between the first and second set of statements, Paiz

18  had a *further* chance to reflect on the situation, thereby leaving a greater chance for

19  misrepresentation.  Defendants have not met their burden of establishing that any of the

20  statements by Paiz would be admissible.

21                     *              *              *

22    At best, the admissible part of the testimony is Gonzalez's description of Paiz's physical

23  condition and demeanor.  That testimony alone is not highly probative of her advance

24  knowledge (or not) of the arson.  Any exculpatory value of the proffered testimony is marginal

25  in the context of the charges and other evidence.

26    To a lesser extent, this order also takes into account the credibility of the predicted

27  testimony.  Gonzalez is a recently-convicted felon and a co-defendant to Paiz.  He is also Paiz's

28                                            10

1    husband and the father of a child recently born to himself and Paiz.  These considerations cast

2    substantial doubt on the credibility and value of Gonzalez's testimony.

3         Finally, having a joint trial would clearly conserve judicial resources.  Accordingly,

4    severance on this ground is denied.  The proffered testimony is not substantially exculpatory.

5         **2.    GONZALEZ'S SEVERANCE MOTION.**

6         Defendant Gonzalez filed a separate motion for severance pursuant to *Bruton v. United*

7    *States*, 391 U.S. 123 (1968).  In *Bruton*, the Supreme Court recognized:

8              [T]here are some contexts in which the risk that the jury will not,
             or cannot, follow instructions is so great, and the consequences of

9              failure so vital to the defendant, that the practical and human
             limitations of the jury system cannot be ignored.  Such a context

10             is presented here, where the powerfully incriminating
             extrajudicial statements of a codefendant, who stands accused

11             side-by-side with the defendant, are deliberately spread before the
             jury in a joint trial.  Not only are the incriminations devastating to

12             the defendant but their credibility is inevitably suspect, a fact
             recognized when accomplices do take the stand and the jury is

13             instructed to weigh their testimony carefully given the recognized
             motivation to shift blame onto others.  The unreliability of such

14             evidence is intolerably compounded when the alleged accomplice,
             as here, does not testify and cannot be tested by

15             cross-examination.

16    *Id.* at 135–36 (citations and footnote omitted).

17         The statements at issue here are found in the FBI interview summary prepared after FBI

18    agents interviewed Paiz.  According to the summary, Paiz initially denied that she engaged in

19    any insurance fraud with respect to the theft of the vehicle.  The summary goes on to state:

20             As the interview continued, PAIZ stated that the theft of the
             vehicle on June 22, 2006, was actually an insurance fraud that

21             *they had planned* in order to get rid of the Honda.  The Honda had
             mechanical problems that were not covered by the warranty, such

22             as difficulty starting.

23             The idea of getting rid of the car and having insurance pay for it
             was brought to her by an associate, whose name PAIZ refused to

24             disclose.  *She said that the job was done by people her husband
             knew.*  She did not know the associates well, knowing only their

25             first names, which she refused to provide.  When pressed about
             *her husbands* [sic] associates, she then said they were her

26             associates but would give no further details.

27

28
                                    11

1  (Blank Decl. Exh. A at 2–3).  The italicized portions are those defendant Gonzalez considers

2  prejudicial under *Bruton.*

3         This order agrees with defendant that the statements by Paiz pose some risk of

4  irreparable prejudice to Gonzalez if they are admitted in an unredacted form at trial.  At oral

5  argument, the government stated that if the Court were to so find, it would not object to

6  redacting the highlighted portions of text (italicized above).  A redaction would not require a

7  severance of the trial.  *See United States v. Parks*, 285 F.3d 1133, 1140 (9th Cir. 2002) ("The

8  district court retains substantial discretion on the issue of severance, and in light of the

9  government's agreement to redact the statement in question, we are persuaded that the trial

10  court did not abuse its discretion in denying Parks' motion for severance.").

11                                      **CONCLUSION**

12         In conclusion, defendants' motions for severance are **DENIED**.  The government shall

13  redact the potentially prejudicial statements from the FBI testimony and should instruct the

14  witness accordingly.  Defense counsel must not open the door on cross-examination to the use

15  of the italicized material.

16

17         **IT IS SO ORDERED.**

18

19  Dated:  July 24, 2007.

20                                                   WILLIAM ALSUP
                                                    UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27

28

12