1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,                    No. CR 06-00710 WHA

        Plaintiff,

    v.                                       **ORDER DENYING
                                             DEFENDANT'S MOTION FOR**
KATHERINE ELIZABETH PAIZ,                    **JUDGMENT OF ACQUITTAL**

        Defendant.
_____/

## INTRODUCTION

In this insurance-scam prosecution, defendant Katherine Paiz moves for judgment of acquittal as to Count Four of the indictment. Defendant was part of a husband-and-wife team convicted of destroying their car, reporting it to an insurance company as stolen and burned, and attempting to collect on the insurance policy. Count Four of the indictment alleged that defendant used or aided and abetted the use of fire in violation of 18 U.S.C. 844(h) to commit a federal felony, namely wire fraud. For the reasons stated below, defendant's motion is **DENIED**.

## STATEMENT

This case centers on 18 U.S.C. 844(h), which provides:

> Whoever — (1) uses fire or an explosive to commit any felony which may be prosecuted in a court of the United States . . . . including a felony which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device shall, in addition to the punishment provided for such felony, be sentenced to imprisonment for 10 years . . . . Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person convicted of a violation of this subsection, nor shall the term of imprisonment imposed under this

**United States District Court**
For the Northern District of California

subsection run concurrently with any other term of imprisonment
including that imposed for the felony in which the explosive was
used or carried.

The indictment was filed on October 26, 2006.  Defendant and her husband were

charged with conspiracy to commit wire fraud, wire fraud, and the use of fire to commit a

federal felony.  The indictment alleged that defendant, a California resident, was the registered

owner of a 2006 Honda Accord EX sedan, which she purchased in early 2006 for over

thirty-thousand dollars.  Just before the "theft," she took out an insurance policy against theft

and damage with Progressive, an insurance company headquartered in Ohio.  Defendant was the

policy beneficiary.  Count Four alleged (Indict. ¶¶ 1, 12):

> On or about June 22, 2006, in the Northern District of California,
> the defendants, KATHERINE ELIZABETH PAIZ and LUIS
> ALBERTO GONZALEZ did knowingly use fire to commit a
> felony which may be prosecuted in a court of the United States,
> specifically wire fraud as alleged in Counts Two and Three, in
> violation of Title 18, United States Code, Sections 844(h)(1) and 2.

The Honda was burned near Byron Airport, not far from her town of residence,

along with approximately five acres of grassland around the vehicle.  The next day,

June 23, 2006, defendant called Progressive to pursue a claim for the total value of the Honda.

Because of the severity of the ten-year provision implicated by Count Four, the Court

adopted over the objection of the government, a strict standard of proof under Section 844(h).

The Court also granted a severance of the husband's trial from the wife's trial, a severance

sponsored by both defense lawyers.

The severance and the circumstances leading up to the severance have been

controversial in the case.  Because this may surface on appeal and this will be the last written

order by the district court, this order will give the issue extended notice, although it is not

immediately a question on the instant motion.  The short version is that, over its reservations,

the Court granted the severance motion made by both defense counsel so that Mr. Gonzalez (the

husband) would testify to supposedly exculpatory information in aid of Paiz's defense.  The

husband's trial went first.  Despite repeated assurances that defense counsel would call Mr.

Gonzalez to testify and repeated assurances that he would in fact testify (rather than invoke

privilege), defense counsel, after obtaining the benefit of the severance, did a reverse and

2

1   declined to call Mr. Gonzalez to the stand after all.  Once the severance was granted and both

2   trials were held, it became apparent that the main, if not exclusive, motive for the severance was

3   to allow each defendant to point the finger of guilt at each other.

4          The long version is as follows.  On June 20, 2007, defendant Paiz moved to sever the

5   joint trial on the basis that her husband possessed exculpatory evidence.  He refused to testify

6   on her behalf at a joint trial.  Defendant's counsel, Nina Wilder, submitted a personal

7   declaration stating that "[Mr. Gonzalez] is willing unconditionally to testify in Ms. Paiz

8   Gonzalez's separate trial" and "I intend, without reservation or condition, to call [him] as a

9   witness" (Decl. ¶ 2).  A hearing was held on the motion.  Attorney Wilder stated, "[Mr.

10  Gonzalez] is an indispensable, favorable witness" and reiterated that "[he] is willing

11  unconditionally to testify at Ms. Paiz Gonzalez's separate trial" (Tr. 16).  On July 18, Mr.

12  Gonzalez's attorney, Daniel Blank, filed a supplemental brief and an *ex parte* under-seal

13  declaration in support of his wife's motion.  He confirmed that he would not testify in a joint

14  trial.  He would testify, however, at a separated trial regarding a telephone conversation he had

15  with his wife shortly after she learned that her car had been torched (Suppl. Br. 8).  Mr.

16  Gonzalez stated that he would describe her demeanor during the conversation as being

17  surprised, shocked, and distressed, which purportedly showed that his wife did not plan or

18  reasonably foresee the use of fire (*id.* at 5).  Attorney Blank was vigorous in supporting a

19  severance.[1]

20         For reasons of judicial economy, among others, the Court was initially reluctant to grant

21  the motion.  On July 24, it denied defendant's motion to sever because she had failed to satisfy

22  Ninth Circuit requirements (Ord. 2–11).  *See United States v. Reese*, 2 F.3d 870, 892 (9th Cir.

23  1993).  Although it did appear that Attorney Wilder would call the husband at a severed trial

24  and that he would in fact testify (Tr. at 2–3), the Court found that the defendants had failed to

25  show that his testimony would be "substantially exculpatory" (*id.* at 11).  A large part of

26  Mr. Gonzalez's proffered testimony would be inadmissible under the hearsay rule.

27

28         [1] Attorney Blank also filed a separate severance motion based on *Bruton v. United States*, 391 U.S.
     123 (1968), which was resolved via redactions in the wife's confession.

United States District Court

For the Northern District of California

**United States District Court**

For the Northern District of California

1   The exculpatory value of the remaining testimony would be marginal in the context of the

2   charges and other evidence.  Furthermore, Mr. Gonzalez's status as a convicted felon and

3   Ms. Paiz's co-defendant and husband cast substantial doubt on the credibility and value of his

4   testimony.  Finally, a joint trial would conserve judicial resources (*id.* at 10–11).

5         Attorney Blank on behalf of Mr. Gonzalez then requested leave to file a joint motion to

6   reconsider.  He contended that telephone records proved that his conversation with defendant

7   occurred immediately after she learned that her vehicle had been torched.  Thus, he argued,

8   the foundational requirement for contemporaneousness under Federal Rule of Evidence 803(3)

9   was satisfied and his testimony about defendant's statement would be admissible under the

10  state-of-mind exception to the hearsay rule.  Attorney Blank also claimed that his testimony

11  would be substantially exculpatory of defendant (Br. 1–2).  On August 2, following a request

12  for further statements, Attorney Wilder and Mr. Gonzalez submitted personal declarations:

13  Attorney Wilder firmly committed to calling Mr. Gonzalez as a witness and Mr. Gonzalez

14  firmly committed to testifying (Wilder Decl. at 1, Blank Decl. ¶¶ 2–5).

15        In light of the stronger record, a tentative order granted the severance on August 3.

16  It stated (at 1): "It appears definite that Mr. Gonzalez would supply testimony from which the

17  jury could conclude that Ms. Paiz was genuinely surprised to learn that the car had been burned

18  . . . . At least some of the evidence . . . . would be admissible under either Federal Rule of

19  Evidence 803(2) or 803(3)."  Further argument was permitted.  The severance was granted.

20  In granting the severance, the Court reiterated that Mr. Gonzalez's absolute commitment to

21  testify for his wife was of critical importance (Tr. 28–29, 37–38).  Attorney Blank confirmed

22  that his client would testify come what may (*id.* at 37–39).  On August 15, in light of the

23  repeated assurances from Attorney Wilder, Attorney Blank, and Mr. Gonzalez that the latter

24  would testify and would be called to exculpate his wife in a separate trial, a written severance

25  order issued.  On August 28, the Court held another status conference and asked Attorney

26  Wilder again whether she would call Mr. Gonzalez as a witness.  She said that she would

27  (Tr. 7).

28

United States District Court

For the Northern District of California

Mr. Gonzalez's trial was set first.  On September 17, the Court held a final pretrial conference.  Mr. Gonzalez had confessed to the FBI and had specifically confessed to having torched the car.  In a surprising turn of events, Attorney Blank announced that, he would point the finger of guilt at the wife based on her confession and argue that the husband's confession was false.  He planned to show that Mr. Gonzalez lied to protect his wife (Tr. 19–41).  At the wife's trial, however, Mr. Gonzalez would still provide exculpatory evidence with respect to Count Four, the use-of-fire charge (*id.* at 27).  In essence, Mr. Gonzalez planned to inculpate his wife in his *own* trial and exculpate her for the use-of-fire count in *her* trial.  Attorney Wilder stated that Attorney Blank's defense strategy would not affect her defense of her client; Attorney Wilder still intended to call Mr. Gonzalez to testify regarding Count Four (*id.* at 41).[2]

Upset by this tactical move, the government promptly moved to undo the severance.  In her response, Attorney Wilder repeated that she definitely planned on calling Mr. Gonzalez as a witness (Opp. 1).  She explained that it was too late to rejoin the cases without prejudicing her client; defendant still relied upon Mr. Gonzalez to provide substantially exculpatory evidence.  Attorney Wilder had built her client's defense around this expectation (Reply 1).  Based thereon, the Court denied the government's order to rejoin.

On September 28, Mr. Gonzalez was convicted of the conspiracy charge and two counts of wire fraud.  He was, however, acquitted of the use-of-fire charge.  During the trial, Attorney Blank introduced the Paiz confession and argued throughout that the wife was the real culprit and that Mr. Gonzalez had falsely confessed to setting the fire to protect her.

Defendant's trial followed shortly thereafter.  The government presented a more streamlined case and also additional evidence to show that defendant was aware that the car would be burned.  Then the government rested and it was Attorney Wilder's turn to present her

---

[2]  In addition to the Paiz confession, Attorney Blank introduced an application to plead guilty to Counts Two and Three earlier signed and filed by Paiz but on which she never followed through with any guilty plea.  No plea colloquy ever began.  No plea was ever entered.  The application, therefore, need not have been filed, it being a mere supplement to ensure that any plea was voluntary and knowing.  Once it was filed, however, Attorney Blank insisted on its introduction as exculpatory of Mr. Gonzalez.

United States District Court

For the Northern District of California

defense. Despite her repeated representations, Attorney Wilder announced that she would *not* call Mr. Gonzalez after all.[3]

Attorney Wilder explained, "[T]he bottom line is that if I were to put Mr. Gonzalez on [the stand] . . . . I would be ineffective. There would be, if not a mistrial, 2255 . . . ." (Tr. 3). At first, Attorney Wilder explained that she had reversed field in light of intervening evidentiary developments, specifically matters that the government would raise on cross-examination.[4] When it appeared, however, that each of these items would go unraised on cross examination, Attorney Wilder stated that she still would not call the husband. She never gave a reason for the about face based on any circumstances not known to her all along. The Court advised Attorney Wilder that her foremost and only duty was to represent her client to the best of her abilities in these circumstances, irrespective of any prior representations to the Court.

Suffice it to say, Attorney Wilder never put Mr. Gonzalez on the stand. She told the jury that her client admitted the first three counts and blamed the husband for the fire, contending that there was insufficient evidence that defendant Paiz was on notice of the use of fire in advance. Paiz did not testify. The jury convicted defendant on all four counts — including the use-of-fire count. Defense counsel never contested the jury instructions; as a matter of fact, in her moving papers, Attorney Wilder states that the instructions "correctly state[d] the law" (Br. 6).

The government contends that the Court was tricked into severing the trials. The real motive for the severance was so they could blame each other without prejudicing each other. That, of course, would not have justified a severance. So, it says, defense counsel invented a sham ground for severance, namely that the husband would exonerate the wife if the trials were

---

[3] There were two hearings on the matter, one on the public record with the government present and one with the government not present. Attorney Wilder submitted a declaration under seal, which led to both hearings. The Court sees little reason for this declaration to remain under seal, but it will remain so, subject to release by the court of appeals.

[4] The government had wanted to introduce into evidence Attorney Blank's argument to the jury that Mr. Gonzalez's wife, defendant, was the guilty party on the wire-fraud counts. An incident at a bar called Tijuana Mike's also presented defendant in an unflattering light. There, defendant struck a police officer in the face to help Mr. Gonzalez elude other police officers. The government had also wanted to introduce jail calls between the two defendants, which would have been excluded.

severed.  The ground was insincere, the government suggests, because either Attorney Wilder never really intended to call the husband as a witness or had not really thought through the consequences of doing so, despite her firm statements of intent.  For purposes of the immediate motion, it is unnecessary to decide whether such gamesmanship was employed.  It is sufficient to lay out the facts so that their procedural history will be clear when the issue arises on appeal.

*        *        *

On October 23, 2007, defendant filed a motion for judgment of acquittal of Count Four on the grounds that: (i) there was no proof that defendant knew or expected before-the-fact that her Honda would be set on fire; (ii) there was insufficient evidence that the burning of the vehicle was a natural, necessary, or foreseeable consequence of the wire-fraud conspiracy alleged in Count One; and (iii) a conviction of Section 844(h) based solely on *Pinkerton* liability does not satisfy *Apprendi v. New Jersey*, 530 U.S. 466 (2000), which requires that any fact or statutory element that increases the maximum penalty for a crime must be proven beyond a reasonable doubt.

## ANALYSIS

In making a ruling under FRCrP 29, "[t]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *United States v. Alarcon-Simi*, 300 F.3d 1172, 1176 (9th Cir. 2002) (internal citation omitted).  "[A] district court must bear in mind that it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts."  *Ibid* (citation omitted in original).  "Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction."  *United States v. Reyes-Alvarado*, 963 F.2d 1184, 1188 (9th Cir. 1992).

### A.  DID THE GOVERNMENT PRESENT SUFFICIENT PROOF OF AIDING AND ABETTING THE USE OF FIRE?

The defense argues that there was insufficient proof that defendant aided and abetted the use of fire.  The requisite intent requirement of aiding and abetting was stated in the final charge to the jury — which was and remains uncontested by defendant:

United States District Court

For the Northern District of California

> To prove a defendant guilty of aiding and abetting the use of fire to commit wire fraud, the government must prove that the defendant actually knew or expected before or during the fire that it was being used or would be used. If before the fire, the defendant only knew that the car was going to be destroyed but had no suspicion of the manner in which it would be destroyed, the defendant cannot be said to have aided and abetted the use of fire to commit wire fraud.

Defendant claims that the trial record fails to show she knew that the Honda would be set on fire, much less that she so intended.

This order finds that the government presented sufficient evidence to show that defendant and her husband planned to burn the car as part of their conspiracy to defraud Progressive out of insurance-policy benefits. Although defendant claims that her actions prior to the burning are "innocently explained," that is not the correct standard in a Rule 29 motion; the evidence must be viewed in the light most favorable to the prosecution. Here, a rational trier of fact could have found beyond a reasonable doubt that defendant actually knew or expected before the fire that fire would be used.

*First*, defendant made a heartfelt confession to FBI agents. She said to FBI Agent Van Nimitsilpa that "*what happened to the vehicle* was part of an insurance fraud that she and her husband came up with, due to the fact that the Honda vehicle had some mechanical issues that wasn't [sic] covered under warranty" (Oct. 2 Tr. 12). Agent Nimitsilpa recalled that defendant described the plan was "[t]o get rid of the Honda" (*id.* at 14). FBI Agent Peter Beaupain, testified that, when he and Agent Nimitsilpa confronted defendant about inconsistencies in her Progressive story, "[s]he admitted that *her* [sic] *and her husband had planned the entire thing*; that — and that it was their idea . . . She was talking about — she said specifically planned the theft of the vehicle for the purpose of fraud for insurance — *to get rid of the car*" (Oct. 3 Tr. 14). It was undisputed that the car was burned to a crisp. Since she confessed to planning "the entire thing" and she "came up with" what "happened to the vehicle," the jury could certainly conclude that she knew all along what was going to happen to the car.

Even though defendant *later* claimed in a written confession that she had no knowledge of the fire, it was up to the jury to determine whether that was merely self-serving damage

United States District Court

For the Northern District of California

control.  According to *United States v. Cisneros*, 448 F.2d 298, 305 (9th Cir. 1971), "[a] trier of fact is not compelled to accept and believe the self serving stories of vitally interested defendants.  Their evidence may not only be believed, but from the totality of the circumstances, including the manner in which they testify, a contrary conclusion may be properly drawn."  Agents Nimitsilpa and Beaupain both testified that, when they pressed defendant "a little bit more on the details of the fire or who came up with the fire and the specifics like that," she changed her statement and became less cooperative (Oct. 3 Tr. 15–17, Oct. 2 Tr. 12–16).  From defendant's oral confession and the testimony of the two FBI agents, it was entirely reasonable for the jury to conclude that defendant and her husband discussed a plan that included burning the car in order to promptly collect on the Progressive policy.

*Second*, there was ample evidence that wife and husband worked together in the scam.  She was the registered owner of the car.  Both were present at the Honda dealership when they learned that the damage to the Honda's engine would cost approximately six to seven thousand dollars in repairs and was not covered by the warranty.  He became visibly angry.  Both left the dealership without paying their bill.  (This was the motive for the fraud: they had a broken down car and needed money to get a new one.)  She then obtained the car insurance, which covered both theft and fire, close in time to the crime.  She then set the stage of the alleged theft by parking the car out of view of the security cameras in the parking lot of Lowe's, where she worked as an employee.  (Normally, she parked in view of the cameras.)  She left a key in the car to facilitate its movement.  The car was torched almost immediately.  After discovering the "theft," she called the highway patrol and learned that the car had already been found burned.  The next day, she made the phony insurance claim, claiming the car had been stolen and burned.  She also had arranged (in advance) for a spare car, anticipating the "theft" of her own car.

*Third*, torching the car was the most obvious way to set up the phony claim.  Defendants needed a plan that would total the car and total it in a way that would be immediately discovered.  Faking a mere theft would have involved several months for the insurance company to determine that the car was not recoverable.  The car had to be completely destroyed

United States District Court

For the Northern District of California

yet found promptly to obtain immediate and total payment.  According to the trial evidence, the

only alternatives were: destroying the car by fire, completely submerging the car in a body of

water, or selling the car to a chop-shop.  Again, dumping the car in a lake or selling it to a chop-

shop would have delayed payment because there would have been no readily discoverable relic.

Submerging the car underwater would have presented considerable risk to the driver.  Regina

Degidio, a claims adjustor for Progressive, testified that, in her experience, she "only had one

drowned car" (Oct. 3 Tr. 12).  She testified, however, that there were "an innumerable number

of burned cars" in instances where a car was "completely totaled" (*ibid.*).  The safest and most

efficient way to destroy the car was to burn it in a location where it could be easily recovered.

A fire at night would lend itself perfectly to that plan because firemen would be promptly called

to douse the flames.  A reasonable jury could have found that Mr. Gonzalez and defendant came

up with an arson plan to ensure prompt and complete payment.

Overall, there was sufficient evidence in the record for a rational jury to conclude

beyond a reasonable doubt that defendant knew or expected that her car would be set on fire as

part of the insurance scam.  Defendant had the requisite mental intent to be found guilty of

aiding and abetting in the use of fire to commit wire fraud.

**B.    DID THE GOVERNMENT PRESENT SUFFICIENT PROOF THAT DEFENDANT WAS VICARIOUSLY LIABLE UNDER *PINKERTON*?**

Defendant alleges that the government failed to provide enough proof that the use of fire

could be reasonably foreseen as a necessary or natural consequence of the unlawful agreement.

Instruction No. 20 set forth the requirements for vicarious liability under *Pinkerton*,

and defendant challenges the verdict on one element.  The challenged element stated:

> [T]he offense fell within the scope of the unlawful agreement and
> could reasonably have been foreseen to be a necessary or natural
> consequence of the unlawful agreement.  Specifically, the
> government must prove that defendant actually expected that fire
> would be used to destroy the car or that under the circumstances
> defendant should have expected that fire was one of the ways the
> car would be destroyed.

Defendant argues that the only direct evidence regarding the scope of her unlawful agreement

was her own statement to the FBI.  In that statement, defendant admitted that, as part of the

insurance fraud, she left a valet key in the Honda so that it could be taken away or gotten rid of

1   by others. Given this evidence, setting the Honda on fire was not a necessary or natural

2   consequence of the unlawful agreement to defraud the insurance company, defendant says.

3        Again, this order disagrees with defendant's arguments. As discussed earlier, it was

4   reasonably foreseeable that fire might be used to get rid of the car. Burning a car in an

5   obvious-to-find venue was the most effective means of obtaining prompt and complete

6   payment. Moreover, as this order has explained, there was sufficient evidence to show that

7   defendant actually expected that fire would be used to destroy the car. Defendant had confessed

8   to FBI agents that she and Mr. Gonzalez had planned to "[g]et rid of the Honda" to defraud

9   Progressive, that they "planned the entire thing," and they "came up with" what happened to the

10  vehicle. She was present with Mr. Gonzalez at the Honda dealership when they learned that

11  damage to the car's engine would cost them thousands of dollars to repair. Defendant made

12  arrangements for the Honda to be stolen and disposed of when she parked it out of view security

13  cameras, left a key in the car to facilitate its movement, and obtained her father's Jetta as a

14  getaway car before the actual burning. There was sufficient evidence to support a verdict on

15  *Pinkerton* liability.

16       **C.    DOES A CONVICTION UNDER THE PINKERTON DOCTRINE
              SATISFY THE REQUIREMENTS OF APPRENDI AND THE SIXTH**

17            **AMENDMENT?**

18       Defendant finally claims that the conviction does not satisfy the requirements of

19  *Apprendi*. Section 844(h) imposes a ten-year enhancement to the sentence. In order for

20  *Apprendi* to be satisfied, defendant argues, every element necessary for the enhancement must

21  be proved beyond a reasonable doubt, including the element of actual knowledge.

22  Under *Pinkerton*, however, "the government is not required to establish that [defendant] had

23  actual knowledge of [the substantive offense]; rather, [t]he touchstone is foreseeability."

24  *United States v. Allen*, 425 F.3d 1231, 1234 (9th Cir. 2005) (citations omitted).

25  Another decision cited by defendant repeats the "touchstone is foreseeability" language.

26  *See United States v. Hoskins*, 282 F.3d 772, 777 (9th Cir. 2002) (citations omitted).

27  Defendant therefore argues that the government's case for *Pinkerton* liability is at odds with the

28  requirements of *Apprendi* — "in a case such as this, where proof of actual knowledge is

**United States District Court**

For the Northern District of California

1   non-existent, a global imputation of co-conspirator liability is insufficient to meet *Apprendi*'s

2   requirement of proof beyond a reasonable doubt of every element of the sentencing

3   enhancement" (Br. 11).

4          This order finds defendant's arguments unconvincing.  *See United States v. Stackpole*,

5   64 Fed. Appx. 842, 843 (3d Cir. 2003) (rejecting the argument that *Pinkerton* liability is

6   "somehow in violation of *Apprendi*") (unpublished).  The Court already required in its final jury

7   instruction No. 20 that the jury find beyond a reasonable doubt all the elements of *Pinkerton*

8   liability (Doc. 203).  Defendant has conceded that the instructions correctly stated the law.

9   As discussed earlier, there was sufficient evidence for a jury to reasonably find that defendant

10  was guilty of aiding and abetting the use of fire to commit wire fraud, or, in the alternative,

11  to find that defendant was vicariously liable under *Pinkerton*.

### CONCLUSION

13         The Court recognizes that the jury in the husband's trial was more lenient than the jury

14  in the wife's trial.  But the fact remains that there was additional evidence of guilt in

15  defendant's case than in Mr. Gonzalez's — *e.g.*, there was more evidence of why the use of fire

16  was the cleanest and easiest plan to facilitate the scam, both confessions were admitted in the

17  first trial but only hers was admitted in the second, and Attorney Wilder conceded to the second

18  jury that defendant was guilty in Counts One through Three.  There is, of course, no collateral

19  estoppel against the government in a criminal case.  *United States v. Standefer*, 447 U.S. 10

20  (1980)).

21         Defendant received a fair trial, one with a favorable instruction of law and with the

22  severance requested — she does not contend otherwise.  The sole question is sufficiency of the

23  evidence.  After viewing the evidence in the light most favorable to the prosecution, the jury

24  could reasonably have found that defendant was guilty of the use-of-fire charge beyond a

25  reasonable doubt.  Defendant's motion for judgment of acquittal is **DENIED**.

26         **IT IS SO ORDERED.**

27  Dated:  November 26, 2007.

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE